UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆

**JWJ, Inc., JWJ Industries, Inc., and Jeffrey
Holbrook,**

**Plaintiffs**

**V.**                                                          **03-CV-311**

**Oswego County, Town of New Haven and New York
State Department of Environmental Conservation,**

**Defendants.**

◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆

APPEARANCES:

Bansbach, Zoghlin & Wahl, P.C.
Mindy L. Zoghlin, Esq., of Counsel
31 Erie Canal Drive, Suite A
Rochester, New York 14626-4604
Attorneys for Plaintiffs

Mackenzie Hughes LLP
David M. Garber, Esq., of Counsel
101 South Salina Street
P.O. Box 4967
Syracuse, New York 13221-4967
Attorneys for Defendant Oswego County

Hiscock & Barclay, LLP
Alan R. Peterman, Esq., of Counsel
221 South Warren Street, Financial Plaza
PO Box 4878
Syracuse, New York 13202-1662
Attorneys for Defendant Town of New Haven

**Hon. Norman A. Mordue, D.J.:**

**MEMORANDUM-DECISION AND ORDER**

**INTRODUCTION**

Presently before the Court are motions by defendants Oswego County and Town of New

Haven[1] to dismiss the amended complaint on the ground of failure to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  For the reasons set forth herein, the Court grants the motions in their entirety.

**AMENDED COMPLAINT**

The amended complaint claims as follows.  Plaintiffs JWJ, Inc. ("JWJ") and JWJ Industries, Inc. ("JWJ Industries") hold permits from New York State Department of Environmental Conservation ("DEC") to haul regulated waste in New York State.  In 1996, plaintiff Jeffrey Holbrook obtained a permit from DEC to operate a transfer station on a parcel he owns in the Town of New Haven, Oswego County.  The permit authorizes Holbrook to accept an average of 40 tons/day (60 tons/day maximum) of construction and demolition waste at the parcel (hereinafter, the "JWJ Transfer Station").  Waste is transferred to the JWJ Transfer Station by JWJ Industries, which has a Major Hauler permit from Oswego County to transport construction and demolition waste to the Oswego County landfill.

On December 21, 1999, Holbrook applied to DEC to modify his 1996 permit to increase the amount of waste accepted at the JWJ Transfer Station to an average of 100 tons/ day (120 tons/day maximum) and to allow him to accept municipal solid waste in addition to construction and demolition waste.  Holbrook contends that under applicable state regulations he was entitled to the permit modification and that DEC lacked discretion to deny it.  On August 24, 2000, DEC issued a Negative Declaration of Environmental Significance and a Notice of Complete Application for the permit modification.  Thereafter DEC did not grant or reject the modification

---

[1]

On May 28, 2004, a stipulation was entered discontinuing all claims against defendant New York State Department of Environmental Conservation.

-2-

application and on February 12, 2002, Holbrook served on DEC a five-day demand asserting that DEC had failed to act within the time frames required by state law.

On February 22, 2002, DEC granted the permit modification but imposed terms and conditions that were unacceptable to Holbrook.  Holbrook asserts, upon information and belief, that the conditions were imposed at defendants' specific request and insistence, to enable them to maintain their economic advantage in the solid waste transfer station business.  Holbrook appealed the conditions and in June 2002 DEC and Holbrook reached a tentative settlement. Between June 2002 and December 2002 DEC advised Holbrook that the settlement had been approved at the "regional" level and that approval by its "central office" would be forthcoming. In January 2003 Holbrook requested that the DEC Administrative Law Judge assigned to the appeal set a hearing date.  On May 28, 2003, Holbrook and DEC resolved the permit conditions issue and DEC granted Holbrook the permit modification under terms and conditions acceptable to him.

The amended complaint alleges that between April 21, 2000 and May 28, 2003, Oswego County engaged in wrongful acts designed to hinder, delay and prevent issuance of the permit modification; that Oswego County did so in order to gain an economic advantage in the marketplace for solid waste transfer station services; and that the acts were intended to and did prevent Holbrook from having meaningful access to the DEC permitting process because he was a business competitor.  Specifically, the amended complaint alleges that Oswego County wrongfully caused DEC to "suspend" review of the permit modification application; urged DEC to deny the permit modification because it would create an economic hardship for Oswego

-3-

County; fabricated and advanced sham arguments in an effort to hinder, delay and prevent issuance of the permit modification and to cause Holbrook to suffer additional delay and expense; manipulated the public permitting process to generate additional sham opposition to the permit modification; demanded that DEC conduct additional public meetings that were not required under New York law; caused the Town of New Haven to pass a "Moratorium on the Establishment of New Construction and Expansion of Existing Solid Waste Uses" and a "Solid Waste Management Law" to hinder and delay issuance of the permit modification; caused the Town of New Haven to express sham concerns to DEC in order to hinder, delay and prevent issuance of the permit modification; caused DEC to delay issuance of the permit modification for three years and then to issue it under unacceptable conditions; and participated in the DEC permitting process in a manner calculated to deny Holbrook free and unlimited access thereto.

The amended complaint alleges similar misconduct on the part of the Town of New Haven.  It further alleges that the Town passed a "Moratorium on the Establishment of New Construction and Expansion of Existing Solid Waste Uses" and a "Solid Waste Management Law" to hinder and delay Holbrook's efforts to obtain the permit modification and expand his transfer station..

The first cause of action under the Sherman Act alleges that defendants' anti-competitive conduct deprives out-of-state businesses of access to a local solid waste market, discriminates against interstate commerce in favor of local businesses or investment, and  assists Oswego County in maintaining its dominance in the operation of solid waste transfer stations, resulting in higher tipping fees to individuals and businesses in the area in violation of section 1 of the Sherman Act, 15 U.S.C. § 1.  Plaintiffs seek an injunction "directing defendants to refrain from

interfering with any future application of plaintiff to modify its transfer station permit." Plaintiffs further allege that they "have suffered large monetary damage, including, but not limited to, loss of anticipated profit."

The second cause of action is for conspiracy to restrain trade under section 1 of the Sherman Act, 15 U.S.C. § 1. The third cause of action claims that defendants have monopolized the market for solid waste transfer station services in the Oswego County area, thus tending to create a monopoly in violation of section 2 of the Sherman Act, 15 U.S.C. § 2. The second and third causes of action do not specifically request injunctive relief. They contain the same monetary damage claim as the first cause of action.

The fourth cause of action alleges an unlawful taking without just compensation; the fifth alleges deprivation of property without due process of law; and the sixth alleges denial of equal protection, all in violation of the federal and state constitutions. The seventh cause of action alleges deprivation of the First Amendment right of access to the courts. The eighth alleges violations of 42 U.S.C. § 1983. The ninth alleges violations of New York State General Business Law 340(1), known as the "Donnelly Act." In their Memorandum of Law on this motion, plaintiffs withdraw their tenth, eleventh and twelfth causes of action.

Plaintiffs seek judgment permanently enjoining defendants from "any conduct violating plaintiff's rights as secured by the Sherman Act"; money damages; compensatory damages "for emotional distress, humiliation, mental anguish, damage to reputation and career"; treble damages; and attorneys' fees, costs and disbursements.

### DISCUSSION

**Standard Applicable to Motion to Dismiss**

In addressing defendants' motions to dismiss the amended complaint under Fed. R. Civ. P. 12(b)(6), the Court reads the amended complaint generously, accepting the truth of and drawing all reasonable inferences from all well-pleaded factual allegations. *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993). Dismissal is proper only if it appears beyond doubt that plaintiffs can prove no set of facts which would entitle them to relief. *See Valmonte v. Bane*, 18 F.3d 992, 998 (2d Cir. 1994).

**Sherman Act Claims**

The first three causes of action state claims under sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2. In moving to dismiss these causes of action defendants correctly point out that the Local Government Antitrust Act ("LGAA"), 15 U.S.C. § 35(a), bars all claims for money damages in antitrust actions against local governments. In their Memoranda of Law in opposition to both motions, plaintiffs "concede that LGAA bars any claim for money damages under the Sherman Act." Plaintiffs argue, however, that the first three causes of action cannot be dismissed because they state claims for injunctive relief, which is not barred by LGAA. *See, e.g., Montauk-Caribbean Airways, Inc. v. Hope,* 784 F.2d 91, 95 (2d Cir. 1986).

A close reading of the amended complaint discloses no allegations which would support any type of injunctive relief. On May 28, 2003, Holbrook ultimately obtained the permit modification which he sought. The allegations of wrongful conduct on the part of defendants pertain solely to events occurring between December 21, 1999, when Holbrook first applied for the permit modification, and May 28, 2003, when he received it. For example, the amended complaint states generally that "[b]etween April 21, 2000 and May 28, 2003, Oswego County engaged in the wrongful acts designed to hinder, delay and prevent Holbrook from obtaining the

-6-

Permit Modification." It further states that "[t]he wrongful acts of Oswego County were performed in order to gain an economic advantage in the marketplace for solid waste transfer station services [and] were intended to and did have the effect of preventing Holbrook from having meaningful access to the DEC permitting process because he was a business competitor." (Amended complaint, paragraphs 36, 37). These two paragraphs are clearly based on alleged conduct by Oswego County which concluded as of May 28, 2003. In support of these allegations, the amended complaint sets forth a lengthy list of specific wrongful acts. (Amended complaint, paragraph 38). The allegations against the Town of New Haven are similar. All of the acts listed occurred prior to May 28, 2003, and pertain to Holbrook's December 21, 1999 permit modification application, which was granted on May 28, 2003.

The amended complaint does not allege that the wrongful conduct continues to occur. Nor does it allege that the wrongful conduct is likely to occur in the future. Indeed, plaintiffs do not even allege that they will again apply for a further permit modification, let alone that there is any reason to anticipate that defendants would attempt to interfere with any such future application or in any other way violate plaintiffs' rights under the Sherman Act. Rather, their Memorandum of Law in opposition to the County's motion states only that "there is no indication that Oswego County is incapable of continuing its anti-competitive conduct" and that plaintiffs "should not be forced to suffer additional damage by a capable, economically motivated competitor." Such assertions are wholly speculative and do not warrant judicial action. Accepting the truth of and drawing all reasonable inferences from the allegations of the amended complaint, the Court finds no basis for injunctive relief of any kind.

Because money damages are barred by LGAA and there is no cognizable claim for

injunctive relief, it appears beyond doubt that plaintiffs can prove no set of facts which would entitle them to relief under the Sherman Act.  Thus, the Court does not reach the other issues raised in connection with these causes of action.

**Takings and due process claims**

In their fourth cause of action, "Unconstitutional Taking," plaintiffs allege that defendants' conduct "constitutes a taking of private property for public use without just compensation" in violation of the state and federal constitutions.  In the fifth cause of action, "Due Process Violations," plaintiffs claim that Holbrook had a property interest in the permit modification and that plaintiffs were deprived of their property without due process of law, also in violation of the state and federal constitutions.  In moving to dismiss these claims, defendants contend that plaintiffs had no protected property interest in the permit modification such as would be entitled to protection under the due process or takings clauses of the United States Constitution.

The basic legal principles bearing on this issue are undisputed.  In their Memoranda of Law in opposition to both motions plaintiffs state the applicable law as follows:

> Plaintiff must have a protected property interest to state a claim under the due process or takings clause of the United States Constitution.  *Story v. Green*, 978 F.2d 60, 62 (2d Cir. 1992).  The question of whether an applicant has a legitimate claim of entitlement to the issuance of a license or certificate depends on whether, absent the due process violation, there is a certainty or a very strong likelihood that the application would have been granted.  *Yale Auto Parts, Inc. v. Johnson*, 758 F.2d 54, 59 (2d Cir. 1985); *Leonard Partnership v. Town of Chenango*, 779 F.Supp. 223, 235 (N.D.N.Y. 1991) (dismissing due process property interest claim because town had discretion to deny
> building permit if plaintiff did not conform to the application requirements).

Plaintiffs urge that here, DEC's discretion was so narrowly circumscribed that approval of a proper application was virtually assured.  *See DLC Management Corp. v. Town of Hyde*

-8-

*Park*, 163 F.3d 124, 132 (2d Cir. 1998).  In support of this assertion, plaintiffs argue that the fact that DEC ultimately granted the permit modification is *prima facie* evidence that DEC lacked authority to deny it.  There is no basis in law or logic for this assertion and the Court rejects it. [2]

The Court also rejects plaintiffs' argument that DEC's discretion to deny the application was narrowly circumscribed by the applicable regulation, 6 NYCRR 621.9(f), which provides: "An application for a permit <u>may</u> be denied for failure to meet any of the standards or criteria applicable under any statute or regulation pursuant to which the permit is sought, including applicable findings required by article 8 of the ECL or for any of the reasons set forth at 621.14(a)(1)-(5) of this Part."  (Emphasis added.)  New York's legislature and courts recognize that, as a general rule, the word "may" when used in legislation imparts discretion.  *See* McKinney's Cons. Laws of N.Y., Book 1, Statutes § 177(a) ("In the absence of anything to indicate a contrary intention, words of ... discretion [in a statute] are treated as permissive.") [3] ; *see generally Natural Resources Defense Council v. New York City Dept. of Sanitation*, 83 N.Y.2d 215, 221 (1994).

There is nothing in 6 NYCRR 621.9(f) to indicate an intention contrary to the general

---

[2]

In this respect it is noteworthy that the application for permit modification was not simply approved but rather was granted subject to numerous "special conditions" specifically directed to plaintiffs' facility and operations.

[3]

The Comment to section 177(a) states in part:

> The Legislature ordinarily uses appropriate language in statutes to express its intention, and, as a general rule, if there is nothing in an act or surrounding circumstances to indicate a contrary intention, words of command are construed by the courts as peremptory. On the other hand, words of discretion are treated as permissive. That is to say, "may" usually means "may" and "shall" generally means "shall" (footnotes omitted).

rule.  Indeed, the sweep of this subdivision, which allows denial of a permit based on failure to

meet any standard or criteria applicable under any statute or regulation under which the permit is

sought, strongly suggests discretion.  Moreover, the broad range of discretion necessarily

exercised by DEC in addressing solid waste management permit applications is manifest from

even a cursory consideration of the complexity of the applicable regulations, 6 NYCRR 360,

subpart 360-1, particularly those applicable to the permitting process itself.  *See* 6 NYCRR §§

360-1.7 ("Permit requirements, exemptions and variances"); 360-1.8 ("Permit application and

registration procedures, generally"); 360-1.9 ("Contents of applications, generally)"; 360-1.10

("Permit issuance criteria"); and 360-1.12 ("Financial assurance").

Plaintiffs further rely on the February 18, 2002 letter from the DEC Regional Permit

Administrator to Hon. Frances Sullivan and the Oswego County Administrator, stating in part:

> As you know, Department Staff have determined that a permit for the project is
> warranted. Moreover, it is our opinion that DEC could not successfully defend a denial
> in this case. Staff have spent considerable time (over two years) negotiating a draft
> permit that fulfills DEC mandate to protect the environment, in general, and properly
> manage solid waste, in particular. The regulations we apply to solid waste management
> facilities (6 NYCRR Part 360) have been met or exceeded by the application before
> us. I also believe that the concerns of local parties have been considered to the full
> extent relevant and possible. Nevertheless, I understand that this is not a proposal
> without controversy to the Town and County.

Even assuming that this letter is properly before the Court, it does not aid plaintiffs.  As

defendants point out, this excerpt (particularly the statement that DEC staff spent over two

years negotiating a draft permit) is consistent with the conclusion that the permitting process

is discretionary.  This is especially so when the excerpt is viewed in conjunction with the 32

"special conditions" set forth in the modified permit.

Plaintiffs raise no other issues in opposition to defendants' motion to dismiss these

-10-

two causes of action. Accepting the truth of and drawing all reasonable inferences from the allegations of the amended complaint, the Court finds no basis upon which plaintiffs could establish a protected property interest in the permit modification such as would be protected under the due process or takings clauses of the United States Constitution. Accordingly, it appears beyond doubt that plaintiffs can prove no set of facts which would entitle them to relief on the fourth and fifth causes of action.

**Equal Protection**

The sixth cause of action in plaintiffs' amended complaint alleges that "defendants treated other similarly situated public entities differently from plaintiffs," and claims that defendants thereby denied plaintiffs the equal protection of the laws. Plaintiffs are not, however, public entities. They are not similarly situated to defendants and thus cannot make out an equal protection claim.

As plaintiffs state in their Memoranda of Law in opposition to both motions: "It is axiomatic that the Equal Protection Clause requires like treatment of similarly situated persons. *City of Cleburne, Texas v. Cleburne Living Center, Inc.*, 472 U.S. 432." The Equal Protection Clause does not, however, forbid all classifications; rather, it prohibits governmental decisionmakers "from treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). For example, in holding that a municipality may impose a license tax upon a private entity but not upon a city utility with which the private entity competed without offending the Equal Protection Clause, the Supreme Court stated:

> It is enough for present purposes that the equal protection clause does not forbid discrimination with respect to things that are different. The distinctions between the

taxing sovereign and its taxpayers are many and obvious. The private corporation, whatever its public duties, carries on its business for private profit, and is subject to the obligation, common to all, to contribute to the expense of government by paying taxes. The municipality, which is enabled to function only because it is a tax gatherer, may acquire property or conduct a business in the interest of the public welfare, and its gains, if any, must be used for public ends. Hence equal protection does not require a city to abstain from taxing the business of a corporation organized for profit merely because in the public interest the municipality has acquired like property or conducts a like business.

*Puget Sound Power & Light Co. v. City of Seattle, Wash.*, 291 U.S. 619, 624 (1934).

The differences between a municipality and a private entity extend far beyond the municipality's taxing authority and encompass the case at bar.  The County of Oswego is required by state law to assure adequate solid waste handling in the interest of the public welfare, whereas plaintiffs have no such obligation and engage in such activity solely for profit.  *See BFI Waste Sys. of N. Am. v. Dekalb County, Ga.*, 303 F.Supp.2d 1335, 1354 (N.D. Ga. 2004) (finding significant differences between privately and publicly operated landfills in Georgia for purposes of equal protection analysis); *see also Home Builders Ass'n of Cent. N.Y., Inc. v. Town of Onondaga*, 701 N.Y.S.2d 542, 543 (4th Dep't 1999) (local law requiring private developers to reimburse town for certain engineering and legal expenses at hourly rates higher than rates for legal fees incurred in connection with other town matters does not deprive plaintiffs of equal protection of the law; plaintiffs and town are not in all relevant respects alike).  Plaintiffs cannot establish that they and defendants are in all relevant respects alike.  Thus, it appears beyond doubt that plaintiffs can prove no set of facts which would entitle them to relief under their sixth cause of action.

**Denial of Access to the Courts**

The seventh cause of action claims that defendants' alleged conduct constitutes a denial of Holbrook's First Amendment right of access to courts and administrative tribunals. In their Memorandum of Law in opposition to the County's motion, plaintiffs argue:

> The Supreme Court has ruled that a First Amendment cause of action exists to remedy a competitor's efforts to attempt to resist and defeat the plaintiffs' permit application because that conduct may interfere with plaintiff's rights to have "free and unlimited access" to the agencies and courts. *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 511-512 (1972). This is precisely what plaintiffs allege (Amended Complaint, para. 16 – 38).

Paragraphs 16 through 38 of the amended complaint, to which plaintiffs specifically refer in the above excerpt from their Memorandum of Law, set forth the background of the permit modification application and assert that the County engaged in wrongful acts designed to hinder, delay and prevent Holbrook from obtaining the permit modification; that the County so acted for the purpose of gaining an economic advantage in the marketplace; and that such acts "were intended to and did have the effect of preventing Holbrook from having meaningful access to the DEC permitting process[.]"  Paragraph 38 of the amended complaint alleges that the County caused DEC to suspend review of the application, urged DEC to deny the application, advanced sham arguments to DEC, demanded that DEC conduct additional public meetings, caused the Town to pass laws to hinder and delay Holbrook's efforts to obtain the modification, caused DEC to delay issuance of the permit modification for three years, caused DEC initially to grant a modification under unacceptable conditions, and participated in the DEC permitting process in a manner calculated to deny Holbrook free and unlimited access to the process.

As explained by the Second Circuit:

It is well established that all persons enjoy a constitutional right of access to the

-13-

> courts....  The right of access to courts extends beyond mere physical access to a
> courtroom and a judge. For instance, the right of access may include affording
> prisoners who are preparing legal papers adequate law libraries or adequate assistance
> from persons trained in the law....  In order to establish a violation of a right of access
> to courts, a plaintiff must demonstrate that a defendant caused actual injury, *i.e.*, took
> or was responsible for actions that hindered [a plaintiff's] efforts to pursue a legal
> claim.

*Monsky v. Moraghan*, 127 F.3d 243, 246-47 (2d Cir. 1997) (citations and internal quotes

omitted).

Here, despite plaintiffs' attempts to cast their claim in denial-of-access terms, there is

in fact no allegation which would support a finding that defendants hindered Holbrook's

efforts to pursue his application for a permit modification.  The amended complaint does not

allege that defendants in any manner prevented Holbrook from filing, supporting or

proceeding with his application.  Indeed, he ultimately obtained the modification he sought.

Essentially, plaintiffs allege no more than that defendants opposed the application, arguably

by improper means, resulting in some delay in the granting of the modified permit.  Plaintiffs

themselves in their Memorandum of Law, quoted above, characterize the actions of which

they complain as "efforts to attempt to resist and defeat the plaintiffs' permit application."

This does not state a claim of interference with plaintiffs' right of access to DEC.[4]  It appears

---

[4]

*California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508 (1972), relied upon by
plaintiffs, is inapposite. There, the court recognized that the First Amendment provides
entities with the right of access to agencies and courts to be heard on applications by
competitive entities, but held that such a right is not immunized from antitrust laws where it is
used as an integral part of a "massive, concerted" anticompetitive scheme. As the court stated:
"First Amendment rights may not be used as the means or the pretext for achieving
substantive evils[.]"  *Id*. at 514.  In the case at bar, however, it is the First Amendment right of
access of the alleged victim which is directly in issue, not that of the alleged perpetrator.  To
the extent that plaintiffs here attempt to draw an analogy between their situation and that of
the plaintiff-respondent in *California Motor Transport*, the amended complaint here falls far
short of alleging the type of scheme alleged in the complaint in that case.

-14-

beyond doubt that plaintiffs can prove no set of facts which would entitle them to relief under their seventh cause of action.

**Section 1983 Claim**

This Court has found that the fourth through seventh causes of action – the only causes of action alleging constitutional violations – fail to state a claim upon which relief may be granted.  Accordingly, the eighth cause of action under 42 U.S.C. § 1983 also fails to state a claim.

**Donnelly Act Claim**

The ninth cause of action states a claim under New York State General Business Law 340(1), known as the "Donnelly Act".  Inasmuch as the Court dismisses all federal causes of action, it declines to exercise supplemental jurisdiction over this claim.  Plaintiffs have withdrawn the remaining state law causes of action.

## CONCLUSION

It is therefore

ORDERED that the motion by defendant Town of New Haven (Dkt. No. 27) to dismiss the amended complaint is granted; and it is further

ORDERED that the motion by defendant Oswego County (Dkt. No. 29) to dismiss the amended complaint is granted; and it is further

ORDERED that causes of action one through eight are dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6); and it is further

ORDERED that the ninth cause of action is dismissed without prejudice; and it is further

ORDERED that inasmuch as plaintiffs have withdrawn their tenth, eleventh and twelfth causes of action, the action is dismissed in its entirety.

IT IS SO ORDERED.

September 21, 2005
Syracuse, New York

Norman A. Mordue
U.S. District Judge

-16-